Filed 2/18/11 by Clerk of Supreme Court

IN THE SUPREME COURT

STATE OF NORTH DAKOTA

2011 ND 39

Joseph M. Vicknair; Anthony Whitaker; 

Theresa Zefiretto, as personal representative 

for the Estate of Liborio Zefiretto; 

Robert Ulshafer; John Sehr; Ray Brunet, 

individually, and as personal representative 

for the Estate of Eugene P. Brunet, deceased; 

Violet Cooper, individually, and as personal 

representative for the Estate of William H. 

Cooper, deceased; Janice Hilborn, individually, 

and as personal representative for the Estate 

of August Freeman, deceased; Mildred Pastva, 

individually, and as personal representative 

for the Estate of John G. Pastva, deceased; 

Cheryl Pernell, individually, and as personal 

representative for the Estate of Eddie 

Pernell, Sr., deceased; Lisa Sangerman, 

individually, and as personal representative 

for the Estate of Richard A. Christofretti, 

deceased; Margaret Swygert, individually, 

and as personal representative for the Estate 

of Cromwell Swygert, deceased; Ruby Todd, 

individually, and as personal representative 

for the Estate of David D. Todd, deceased; 

Rona Pourier, individually, and as personal 

representative for the Estate of Hobert 

Ecoffey, deceased; and Patrick Blando, 

individually, and as personal representative 

for the Estate of Wendell Blando, deceased; Plaintiffs and Appellants

v.

Phelps Dodge Industries, Inc.; A.H. Bennett 

Company; A.W. Kuettel & Sons, Inc.; Border 

States Industries, Inc.; Columbia Boiler Co.; 

Crane Co,; Cleaver-Brooks, Division of Aqua-Chem, 

Inc.; Dossert Corporation; DuctSox Corporation 

f/k/a Frommelt Safety Products; Superior Essex Group 

(individually and as successor-in-interest to Essex 

International, Inc.); Electric Supply Corp.; Excelsior, 

Inc.; Foster Wheeler, LLC; Greene, Tweed & Company; 

Houston Specialty Wire & Cable Corp.; Oakfabco 

f/k/a Kewanee Boiler Corporation; Rockbestos-Surprenant 

Cable Corp. (f/k/a The Rockbestos Company); Riley 

Stoker Corporation; Robertson Ceco Corporation, f/k/a 

H. H. Roberson Company; Sprinkman Sons Corporation; 

Weil McLain Company; Zurn Industries, Inc.; United Conveyor 

Corporation; S.O.S. Products Company, Inc.; 

Foseco, Inc.; Fuel Economy Engineering, Co.; 

Burnham LLC, f/k/a Burnham Corporation; 

Bryan Steam Corporation; Certain-Teed Corporation; 

Foster Products Corporation (as successor-in-interest 

to Foster Products Division of H.P. Fuller 

Company and to the Benjamin Foster Division 

of AmChem Products, Inc.); Graybar Electric; 

H.P. Fuller Company; Hobart Brothers Co.; 

Inductotherm Industries, Inc.; 

The Jamar Company (individually and as 

sucessor-in-interest and liability to the 

Walker-Jamar Company); John Crane, Inc. 

(successor-in-interest to John Crane-Houdaille, 

Inc. and Crane Packing Company); Kelsey-Hayes 

Group (a division of Varity Corporation); Linde, 

Inc., f/k/a BOC Group and/or Airco, Inc.; 

Lincoln Electric Co.; Praxair Distribution, 

Inc.; RCH Newco II; Rhone-Poulenc, Inc. (as 

successor-in-interest to Benjamin Foster, 

a division of AmChem Products Company); 

Stemmerich Supply Co.; Thermo Electric Co. 

(n/k/a Exteco, Inc.); and Union Carbide 

Corporation, Defendants and Appellees

and

999 Quebec, Inc. (a/k/a International Boiler Works 

Company); ACandS, Inc. (individually and as 

successor-in-interest to Armstrong Contracting & 

Supply, Inc. and Keasby & Mattison Company); A.L. 

Crump and Company, Inc.; American 

Standard, Inc.; A.P.I., Inc. (a/k/a A.P.I. 

Company of Minnesota); A.W. Chesterton Company; 

Anchor Packing Company; Apollo Piping & 

Supply; Asbestos Corporation, Ltd.; Atlas Turner, Inc.; 

Australian Blue Asbestos, Pty.; Bell &  Gosset; Bell 

Asbestos Mines, Ltd.; Building Sprinkler Company, 

Inc.; CBS Corporation (f/k/a Westinghouse 

Electric Corporation); Chromalox (a division of 

Emerson Electric Company); Combustion Engineering, Inc. 

(successor-in-interest to M.H. Detrick Company, 

Walsh Refractory Corporation and Refractory and 

Insulation Corporation); Crown Cork & Seal Company, 

Inc. (successor-in-interest to Mundet Cork Corporation); 

CSR, Ltd. (a/k/a Colonial Sugar Refining Company, Ltd.) 

individually and as an alter-ego of Australian Blue 

Asbestos, Pty.; Dakota Welding Supply; Deltak, L.L.C. 

(a Unit of Jason Inc.); Detroit Stoker; Draxton Sales; 

Dresser Industries, Inc.; Durabla Manufacturing Company; 

E.J. Lavino and Company, Inc.; Electric Supply Corp.; 

Emerson Electric Co.; Ericsson, Inc. (f/k/a Cablec Corp.) 

(as successor-in-interest to Anaconda Wire & Cable 

Company); F.R.P. Products, Ltd.; F & C Supply, Inc.; 

Fargo-Moorhead Insulation Company; Firebrick 

Supply Co.; Fisher Governor Co.; Flintkote Company 

(individually and as successor-in-interest to 

Flintkote Mines, Ltd.); Flintkote Mines, Ltd.; Garlock, Inc.; 

General Electric Company; George T. Walker & Co., Inc.; 

Georgia-Pacific Corp.; Henry Vogt Machine Company; 

Hercules Chemical Company, Inc.; Hickory 

Insulation Co.; Honeywell, Inc.; Hopeman 

Brothers, Inc.; Illinois Insulation Contracting 

Company, Inc. (f/k/a Illinois Roofing & Insulation 

Company); Ingersoll-Rand Company; Insulation Services, 

Inc.; International Vermiculite Co.; Jerguson Gage & Valve; 

J.H. France Refractories Company; Johnston Boiler 

Co.; Lac d’Amiante du Quebec, Ltee. 

(f/k/a Lake Asbestos of Quebec); Lochinvar; M.W. 

Kellogg Company; MacArthur Company; Mandan 

Electric Supply; Marmon Corporation; McMaster 

Carr Supply Company; McNeil Refactories, Inc.; 

Mellema Company; Metropolitan Life Insurance Company; 

Mine Safety Appliance Company; Minnesota Mining & 

Manufacturing; Northern Plumbing Supply, Inc.; 

The Okonite Company, Inc.; Owens-Illinois, Inc.; 

Parker Boiler Co.; Paul A. Douden; Pfizer, Inc.; Pipe, 

Valve & Fittings Company; Power Process Equipment, Inc.; 

Quigley Co., Inc.; Quin-T Corporation; Rapid-American 

Corporation; Research Cottrell, Inc.; 

Rockwell International Corporation; Rome Cable 

Corp.(a subsidiary of Rome Group Inc.); Roughrider Supply; 

Ryall Electric Supply Co.; Samuel Moore & Co.; 

Smith-Sharpe Company; SEPCO Corporation; 

Superior Boiler Works, Inc.; Sussman 

Electric Boilers; The Trane Company (a division of 

American Standard Inc.); U.S. Filter Co.; 

Union Boiler Co.; Uniroyal, Inc.; 

and Victor H. Leeby Company, Defendants

No. 20100029

Appeal from the District Court of Morton County, South Central Judicial District, the Honorable Robert O. Wefald, Judge.

AFFIRMED.

Opinion of the Court by VandeWalle, Chief Justice.

David C. Thompson (argued), David C. Thompson, P.C., P.O. Box 5235, Grand Forks, N.D. 58206-5235, and Jeanette Boechler (on brief), Boechler Law Firm, P.O. Box 1932, Fargo, N.D. 58107-1932, for plaintiffs and appellants.

Larry L. Boschee (argued), Pearce & Durick, P.O. Box 400, Bismarck, N.D. 58502-0400, for defendant and appellee Phelps Dodge Industries, Inc.

Robert E. Diehl, Kyle Brown Mansfield, Heather Holland Neubauer, Elizabeth Marie Sorenson Brotten, Foley & Mansfield P.L.L.P., 250 Marquette Avenue, Suite 1200, Minneapolis, MN 55401, for defendants and appellees A.H. Bennett Company; A.W. Kuettel & Sons, Inc.; Border States Industries, Inc.; Columbia Boiler Co.; Dossert Corporation; DuctSox Corporation f/k/a Frommelt Safety Products; Superior Essex Group (individually and as successor-in-interest to Essex International, Inc.); Electric Supply Corp.; Excelsior, Inc.; Foster Wheeler, LLC; Greene, Tweed & Company; Houston Specialty Wire & Cable Corp.; Rockbestos-Surprenant Cable Corp. (f/k/a The Rockbestos Company); Riley Stoker Corporation; Robertson Ceco Corporation, f/k/a H.H. Roberson Company; Stemmerich Supply Co.; Sprinkman Sons Corporation; Weil McLain Company; and Zurn Industries, Inc.

David Thomas Schach, Meagher & Geer, 33 South Sixth Street, Suite 4400, Minneapolis, MN 55402, for defendants and appellees United Conveyor Corporation; and S.O.S. Products Company, Inc.

Steven A. Storslee, Storslee Law Firm, 1900 Burnt Boat Drive, Suite 101, Bismarck, N.D. 58503, for defendant and appellee John Crane, Inc. (successor-in-

interest to John Crane-Houdaille, Inc. and Crane Packing Company).

Ronald H. McLean and Jane L. Dynes, Serkland Law Firm, P.O. Box 6017, Fargo, N.D. 58108-6017, for defendants and appellees Certain-Teed Corporation, H.P. Fuller Co., Foster Products Corporation, as successor-in-interest to Foster Products Division of H.P. Fuller Company and to the Benjamin Foster Division of AmChem Products, Inc., Rhone-Poulenc, Inc., and Union Carbide Corporation.

Stephen W. Plambeck, Nilles, Ilvedson, Plambeck & Selbo, Ltd., P.O. Box 2626, Fargo, N.D. 58108-2626, for defendants and appellees Burlington Northern Cleaver-Brooks Carlisle Companies.

Scott David Jensen, Camrud Maddock Olson & Larson, Ltd., P.O. Box 5849, Grand Forks, N.D. 58206-5849, for defendants and appellees Oakfabco f/k/a Kewanee Boiler Corporation; John Crane, Inc. (successor-in-interest to John Crane-

Houdaille, Inc. and Crane Packing Company); Cleaver-Brooks, Division of Aqua-

Chem and Thermo Electric Co., n/k/a Exteco, Inc.

Michael D. Sharkey and Jon P. Parrington, Pustorino, Tilton, Parrington & Lindquist, P.L.L.P., 4005 West 65th Street, Suite 200, Minneapolis, MN 55435-1765, for defendant and appellee Fuel Economy Engineering Co.

Nicholas John O’Connell, Murnane Brandt, 30 East 7th Street, Suite 3200, St. Paul, MN 55101, for defendant and appellee Foseco, Inc.

Shawnda R. Ereth, Zuger Kirmis & Smith, P.O. Box 1695, Bismarck, N.D. 58502-1695, for defendant and appellee Burnham LLC, f/k/a Burnham Corporation.

Paul Rudell Oppegard, Oppegard, Wolf & Quinton, P.O. Box 657, Moorhead, MN 56561-0657, for defendants and appellees Linde, Inc. F/k/a BOC Group and/or Airco, Inc., Hobart Brothers, Co., Lincoln Electric Co., Praxair Distribution Inc., Inductotherm Industries, Inc., Graybar Electric, and Kelsey-Hayes Group, a division of Varity Corporation.

Richard John Leighton, 800 Wells Fargo Center, 230 West Superior Street, Suite 800, Duluth, MN 55802, for defendants and appellees The Jamar Co., individually and as successor-in-interest and liability to Walker-Jamar Company.

Stacey Tjon Bossart, Solberg, Stewart, Miller & Tjon, P.O. Box 1897, Fargo, N.D. 58107-1897, for defendant and appellee Bryan Steam Corporation.

Jeb Donavan Oehlke, North Dakota Chamber of Commerce, P.O. Box 2639, Bismarck, N.D. 58502, Cary Silverman and Mark A. Behrens, Shook Hardy & Bacon L.L.P., 1155 F Street NW, Suite 200, Washington, DC 20004, and Robin S. Conrad, National Chamber Litigation Center, Inc., 1615 H. Street NW, Washington, DC 20062, amicus curiae North Dakota Chamber of Commerce, Coalition for Litigation Justice, Inc., Chamber of Commerce of the United States of America, National Association of Manufacturers, NFIB Small Business Legal Center, American Tort Reform Association, Property Causality Insurers Association of America, and American Insurance Association.

Vicknair v. Phelps Dodge Industries, Inc.

No. 20100029

VandeWalle, Chief Justice.

[¶1] Joseph Vicknair and twelve other plaintiffs appealed from a district court summary judgment dismissing their asbestos-related product liability actions against Phelps Dodge Industries, Inc., and numerous other companies on the grounds that the applicable statutes of limitations had run on their claims.  We affirm, concluding the district court did not err in ruling North Dakota’s six-year statute of limitations for personal injury actions did not apply to the plaintiffs’ claims and in refusing to allow additional time for discovery before ruling on the summary judgment motion.

I

[¶2] In December 2002, the plaintiffs were part of a group of individuals who brought actions in district court against manufacturers, sellers, and distributors of asbestos-containing products, claiming they were injured by exposure to those products.  All of the plaintiffs involved in this appeal are residents of states other than North Dakota and do not claim that their exposure to asbestos-containing products occurred in North Dakota.  The numerous corporate defendants are residents of various states, including North Dakota.

[¶3] The defendants moved to dismiss the plaintiffs’ claims, arguing North Dakota was an inconvenient forum to conduct the litigation. The district court granted the motions and dismissed the claims without prejudice.  The plaintiffs appealed, arguing the court erred in dismissing the claims based upon 
forum non conveniens
 because the statutes of limitations had run in all other jurisdictions except North Dakota.  This Court reversed the judgment dismissing the plaintiffs’ claims and remanded for further proceedings, concluding the availability of an alternate forum is a prerequisite to application of 
forum non conveniens
 and “an adequate alternative forum does not exist if the statute of limitations has expired in the proposed alternative forum.”  
Vicknair v. Phelps Dodge Indus., Inc.
, 2009 ND 113, ¶ 13, 767 N.W.2d 171.  We expressly cautioned, however, that our decision “does not necessarily mean North Dakota’s applicable statute of limitations will govern in this case.”  
Id.

[¶4] On remand following the first appeal the defendants again moved for summary judgment, arguing that the applicable statutes of limitations had run on all of the plaintiffs’ claims.  The plaintiffs conceded that the applicable statutes of limitations in all other potential jurisdictions, which ranged from one to four years, had run on their claims.  They argued, however, that the district court should apply the “escape clause” of the Uniform Conflict of Laws—Limitations Act, N.D.C.C. § 28-01.2-04, and apply North Dakota’s longer six-year statute of limitations to their claims.  Alternatively, the plaintiffs requested that the court permit additional time for discovery before ruling on the motion for summary judgment.  The district court concluded the escape clause did not apply and the plaintiffs’ claims were barred by the statutes of limitations.  Judgment was entered dismissing the plaintiffs’ claims with prejudice.

II

[¶5] The plaintiffs contend the district court erred in concluding that the escape clause in N.D.C.C. § 28-01.2-04 did not apply and that North Dakota’s six-year personal injury statute of limitations therefore did not govern their claims.
(footnote: 0)
[¶6] North Dakota has adopted the Uniform Conflict of Laws—Limitations Act.  
See
 N.D.C.C. ch. 28-01.2.  Under the Act, limitations laws are treated as substantive rather than procedural, and ordinarily courts are to apply the statute of limitations of the state whose law governs the substantive issues in the case.  
See
 N.D.C.C. § 28-01.2-02; 
Perkins v. Clark Equip. Co.
, 823 F.2d 207, 210 (8th Cir. 1987); Prefatory Note, Uniform Conflict of Laws—Limitations Act, 12 U.L.A. 156 (2008).  According to the drafters of the Uniform Act, the purpose of treating the statute of limitations as substantive rather than procedural is to discourage “[f]orum shopping by delay-prone plaintiffs, or by their attorneys, with suits filed in states with long limitation periods.”  Prefatory Note, 
supra
, 12 U.L.A. 156; 
see also
 Leflar, 
The New Conflicts—Limitations Act
, 35 Mercer L. Rev. 461, 479 (1984) (“a main purpose of the new act was to do away with forum shopping”).

[¶7] Section 28-01.2-02, N.D.C.C., governs the determination of which state’s statute of limitations will apply in an action brought in this state:

1. Except as provided by section 28-01.2-04, if a claim is substantively based upon:

a. The law of one other state, the limitation period of that state applies; or

b. The law of more than one state, the limitation period of one of those states chosen by the law of conflict of laws of this state, applies.

2. The limitation period of this state applies to all other claims.

[¶8] The plaintiffs do not argue that the substantive law of North Dakota will apply to any of the claims in this case.  Each of the plaintiffs’ respective claims is based upon the substantive law of some other state or states.  Thus, if the general choice-of-

law principles of N.D.C.C. § 28-01.2-02 apply, those other states’ respective statutes of limitations apply and all of the plaintiffs’ claims are barred.

[¶9] The plaintiffs allege, however, that N.D.C.C. § 28-01.2-02 recognizes an exception which requires the application of North Dakota’s statute of limitations to their claims.  They rely exclusively upon N.D.C.C. § 28-01.2-04, which provides:

If the court determines that the limitation period of another state applicable under sections 28-01.2-02 and 28-01.2-03 is substantially different from the limitation period of this state and has not afforded a fair opportunity to sue upon, or imposes an unfair burden in defending against, the claim, the limitation period of this state applies.

The drafters of the Uniform Act, although noting that this provision created an “escape clause” allowing courts to “avoid injustice in particular cases,” expressly cautioned that it “should rarely be employed,” and only in “extreme cases” to avoid “harsh results.”  Uniform Conflict of Laws—Limitations Act § 4, Comment, 12 U.L.A. 162.  The drafters further emphasized the limited application of the escape clause:

Litigants will not often be able to take advantage of the “escape clause.”  It is not enough that the forum state’s limitation period is different from that of the state whose substantive law is governing; the difference must be “substantial,” and the “fair opportunity” provision constitutes a separate and additional requirement.  An “escape clause” is needed, but it is not designed to afford an “easy escape”.

Id.
  Professor Leflar, who chaired the Committee of the National Conference of Commissioners on Uniform State Laws that prepared the Uniform Act, 
see
 12 U.L.A. 155, has noted that the escape clause should be “construed as narrowly as possible,” and although fact situations to which the escape clause may apply “can be imagined, . . . there cannot be many of them.”  Leflar, 
supra
, 35 Mercer L. Rev. at 479-80.

[¶10] It is within this statutory framework that we consider the plaintiffs’ contention that the district court erred in failing to apply the escape clause to trigger application of North Dakota’s six-year statute of limitations.  The parties’ arguments on this issue center upon which party bears the burden of proving whether the escape clause in N.D.C.C. § 28-01.2-04 applies.  The plaintiffs argue that the district court erroneously placed the burden of proof upon them to establish the escape clause applied, and that the defendants had the burden to prove all elements of the statute of limitations, including the non-applicability of the escape clause.  They therefore contend it was incumbent upon the defendants in their motion for summary judgment to present evidence demonstrating that the statutes of limitations of the other states whose substantive law would govern the plaintiffs’ claims afforded a fair opportunity for the plaintiffs to sue upon their claims.  The defendants argue that, as the parties seeking application of the escape clause, the plaintiffs bore the burden of proving the escape clause applied.  They further contend that the plaintiffs failed to present any evidence that the other states’ statutes of limitations did not afford a fair opportunity to sue upon their claims, and summary judgment was therefore appropriate.

[¶11] When a statute is derived from a uniform act it “must be so construed as to effectuate its general purpose to make uniform the law of those states which enact it.”  N.D.C.C. § 1-02-13.  We therefore will seek guidance from decisions in other states which have interpreted the uniform act, 
In re Estate of Conley
, 2008 ND 148, ¶ 15, 753 N.W.2d 384 (quoting 
In re Estate of Allmaras
, 2007 ND 130, ¶ 13, 737 N.W.2d 612), and “[w]e construe uniform laws the same way as other jurisdictions ‘to provide consistency and uniformity in the law.’” 
Smith v. Hall
, 2005 ND 215, ¶ 17, 707 N.W.2d 247 (quoting 
In re Estate of Krueger
, 529 N.W.2d 151, 153 (N.D. 1995)).

[¶12] The Uniform Act has been adopted in only seven states, 
see
 12 U.L.A. 155, and there are relatively few reported decisions interpreting the Act.  In two cases, however, courts interpreting the Act have indicated that it is the party urging application of the escape clause who should have the burden of proof and be required to present evidence that the limitations period of the other state has not afforded a fair opportunity to sue upon the claim.  In 
Hall v. Summit Contractors, Inc.
, 158 S.W.3d 185, 189 (Ark. 2004), the court upheld a summary judgment dismissing the plaintiff’s claims, concluding that where the plaintiff did not “assert[] any facts that would indicate that she encountered any kind of substantial barriers to instituting suit within one year,” but had simply asserted that the other state’s one-year limitations period did not afford a reasonable opportunity to sue, “this bald assertion of ‘unfairness,’ with no evidence to support it, is insufficient to warrant reversal.”  Similarly, in 
Hein v. Taco Bell, Inc.
, 803 P.2d 329, 334 (Wash. Ct. App. 1991), the court affirmed a summary dismissal, concluding that “[a]bsent other evidence indicating unfairness, we hold that the California limitation period provided Hein with a ‘fair opportunity’ to sue.”  These cases suggest that it is the party seeking application of the escape clause who must present evidentiary support for their assertion that they did not have a fair opportunity to sue under the other state’s limitation period.

[¶13] Further support for this conclusion is found in 
Kimball v. Landeis
, 2002 ND 162, ¶ 29, 652 N.W.2d 330, in which this Court held that “[a] party who claims the benefit of an exception to a statute of limitations bears the burden of showing the exception.”  
See also
 
Paracelsus Healthcare Corp. v. Philips Med. Sys., Nederland, B.V.
, 384 F.3d 492, 497 (8th Cir. 2004).  We are also guided by the “familiar principle that ‘[w]hen a priviso . . . carves an exception out of the body of a statute . . . those who set up such exception must prove it.’”  
Meacham v. Knolls Atomic Power Lab.
, 554 U.S. 84, 91 (2008) (quoting 
Javierre v. Central Altagracia
, 217 U.S. 502, 508 (1910)).  In this case, the plaintiffs seek to apply a narrow exception to the statute which delineates the broad, general rules for determining which statute of limitations will govern actions brought in the courts of this state.  It is only logical and fair that the party urging application of the exception should be required to establish the factual basis for invoking it.

[¶14] In fact, this case provides an excellent example of why the burden should be placed upon the party urging application of the exception.  The plaintiffs allege that the defendants should have been required, as support for their summary judgment motion, to provide evidence demonstrating that the limitations periods of each of the various other states whose statutes of limitations would have applied to these claims under N.D.C.C. § 28-01.2-02 would have afforded a fair opportunity for each individual plaintiff to sue upon their claim.  However, at that point (and even now on appeal) the plaintiffs had never identified how they were burdened or denied a fair opportunity to litigate their claims by the other states’ limitation periods.  The plaintiffs assert that the determination whether they were afforded a fair opportunity to litigate their claims was case-specific and fact-specific, but all of the relevant facts concerning the plaintiffs’ ability to fairly litigate their claims under the other states’ limitation periods are uniquely within the plaintiffs’ own knowledge.  The defendants would have to speculate about the plaintiffs’ possible legal theories, or provide mere generalities, if required to provide evidentiary support establishing that these plaintiffs were afforded a fair opportunity to sue upon their specific, individual claims.  It is far more logical, and fair, to require the plaintiffs to identify and articulate the exceptional, rare, and harsh circumstances which would warrant application of the escape clause and to require that they provide evidence demonstrating they have been denied a fair opportunity to sue upon their claims.

[¶15] We conclude that the plaintiffs, as the parties urging application of the escape clause in N.D.C.C. § 28-01.2-04, bore the burden of establishing that the exception applied.  The plaintiffs have made only a “bald assertion of ‘unfairness.’”  
Hall
, 158 S.W.3d at 189.  Because the plaintiffs failed to present any evidence demonstrating that they were not afforded a fair opportunity to sue upon their claims by the other states’ limitation periods, they failed to raise a genuine issue of material fact on an issue upon which they bore the burden of proof, 
see
, 
e.g.
, 
Barbie v. Minko Constr., Inc.
, 2009 ND 99, ¶ 6, 766 N.W.2d 458, and summary judgment was appropriate.  The district court did not err in concluding that the escape clause did not apply, North Dakota’s six-year statute of limitations did not apply, and the plaintiffs’ claims were barred by the applicable statutes of limitations.

III

[¶16] The plaintiffs contend that the district court erred in failing to allow additional time for discovery under N.D.R.Civ.P. 56(f) before ruling on the summary judgment motion.

[¶17] Rule 56(f), N.D.R.Civ.P., provides:

Should it appear from the affidavits of a party opposing the motion that the party cannot for reasons stated present by affidavit facts essential to justify the party’s opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

[¶18] This Court explained the application of N.D.R.Civ.P. 56(f) in 
Horob v. Farm Credit Servs. of North Dakota ACA
, 2010 ND 6, ¶ 20, 777 N.W.2d 611:

“Summary judgment is appropriate only after the non-moving party has had a reasonable opportunity, for discovery to develop his position.”  
Choice Fin. Group v. Schellpfeffer
, 2006 ND 87, ¶ 9, 712 N.W.2d 855.  Under N.D.R.Civ.P. 56(f), a court may order a continuance to allow additional discovery before deciding a motion for summary judgment.  Whether a court allows additional time for discovery under N.D.R.Civ.P. 56(f) is within the court’s discretion, and the court’s decision will not be reversed on appeal absent an abuse of discretion.  
Schellpfeffer
, at ¶ 9.  “A court abuses its discretion if it acts in an arbitrary, unreasonable, or unconscionable manner, or if it misinterprets or misapplies the law.”  
Id.
 (quoting 
Security Nat’l Bank v. Wald
, 536 N.W.2d 924, 928 (N.D. 1995)).

[¶19] The underlying purpose of N.D.R.Civ.P. 56(f) is to ensure that a party has a fair opportunity to conduct discovery before responding to a summary judgment motion:

Our primary concern under Rule 56(f) is to ensure that parties are given a full and fair opportunity to conduct necessary discovery before being required to meet a motion for summary judgment.  Rule 56(f) “is intended to safeguard against judges swinging the summary judgment axe too hastily.”  
Resolution Trust [Corp. v. North Bridge Assocs., Inc.]
, 22 F.3d [1198,] 1203 [(1st Cir. 1994)].  We will apply the rule to prevent a “rush to summary judgment” when a party has been denied a fair opportunity to conduct discovery.

Aho v. Maragos
, 1998 ND 107, ¶ 7, 579 N.W.2d 165 (footnote omitted).  It is not enough, however, for a party invoking N.D.R.Civ.P. 56(f) to merely recite conclusory, general allegations that additional discovery is needed.  Rather, N.D.R.Civ.P. 56(f) requires that the party, preferably by affidavit, identify with specificity what particular information is sought, and explain how that information would preclude summary judgment and why it has not previously been obtained.  
Choice Fin. Group v. Schellpfeffer
, 2006 ND 87, ¶¶ 12 and 18, 712 N.W.2d 855.  The plaintiffs did not submit affidavits supporting their request for additional discovery under N.D.R.Civ.P. 56(f), nor have they drawn our attention to any part of the record demonstrating that they explained to the district court the specific information sought, how the information would have precluded summary judgment, or why the information had not previously been obtained.  Even at this point on appeal, the plaintiffs have not identified what information further discovery would provide that would preclude summary judgment.

[¶20] We also note that these cases were commenced in December 2002, almost seven years before this summary judgment motion was filed in September 2009.  Even if we disregard the time that these cases were effectively held in abeyance for dispositive motions or the prior appeal, they have still been actively pending for several years, affording the plaintiffs more than “a full and fair opportunity to conduct necessary discovery.”  
Aho
, 1998 ND 107, ¶ 7, 579 N.W.2d 165. This is hardly the “rush to summary judgment” the rule is intended to prevent.  
Id.

[¶21] We conclude the district court did not act in an arbitrary, unreasonable, or unconscionable manner, and did not abuse its discretion when it refused to allow additional time for discovery under N.D.R.Civ.P. 56(f) before ruling on the summary judgment motion.

IV

[¶22] We have considered the remaining issues and arguments raised by the parties and find them to be either unnecessary to our decision or without merit.  The judgment is affirmed.

[¶23] Gerald W. VandeWalle, C.J.

Dale V. Sandstrom

William F. Hodny, S.J.

Allan L. Schmalenberger, S.J.

Lawrence A. Leclerc, S.J.

[¶24] The Honorable Allan L. Schmalenberger, S.J., the Honorable William F. Hodny, S.J., and the Honorable Lawrence A. Leclerc, S.J., sitting in place of Maring, J., Crothers, J., and Kapsner, J., disqualified.

FOOTNOTES
0:
いぃ    
For purposes of this appeal, we will assume the six-year statute of limitations in N.D.C.C. § 28-01-16(5) would apply to an asbestos-based products liability action brought under North Dakota substantive law.  
See
 
Mertz v. 999 Quebec, Inc.
, 2010 ND 51, ¶ 8 n.1, 780 N.W.2d 446.